IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ALLEN W. McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-093 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 14] will be granted, and plaintiff's motion for summary judgment [doc. 10] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff filed the present SSI application in February 2006, claiming to be disabled by a ruptured disc, compression fractures, depression, and hernias. [Tr. 48, 50, 57]. He alleges a disability onset date of January 4, 2006, coinciding with a purported fall off of

his father's roof.  [Tr. 50, 311].

The claim was denied initially and on reconsideration.  Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in August 2007.

In September 2007, the ALJ issued a decision denying benefits.  He concluded that plaintiff suffers from the severe impairments of "an old compression fracture of T-9 and chronic pain syndrome," but that those conditions are not equal, individually or in combination, to any impairment listed by the Commissioner.  [Tr. 18].  The ALJ termed plaintiff's credibility "diminished" and further wrote that the "allegations of disabling pain and other disabling physical symptoms are not supported by the record as a whole."  [Tr. 19]. The ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform the full range of medium exertion. [Tr. 18].  Relying on Rule 203.25 of the Commissioner's medical-vocational guidelines ("the grid"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.25, the ALJ ruled plaintiff "not disabled" and thus ineligible for SSI benefits.  [Tr. 19-20].

Plaintiff then sought review from the Commissioner's Appeals Council.  On January 25, 2008, review was denied.  [Tr. 4].  The ALJ's ruling then became the Commissioner's final decision.  20 C.F.R. § 416.1481.  Through his timely complaint, plaintiff has properly brought his case before this court for review.  *See* 42 U.S.C. § 405(g).

## II.

### *Background and Testimony*

Plaintiff was born in 1971 and has a seventh grade education.  [Tr. 55, 61].  In his Work History Report submitted to the Commissioner, plaintiff acknowledges prior employment as a dishwasher and maintenance worker.  [Tr. 67].[1]

Plaintiff alleges that he engages in no chores and only minimal personal care because such activities worsen his back pain or "hurt[] my back terribly." [Tr. 76-78, 99]. He also alleges worsening pain radiating into his left leg and purportedly cannot lift, squat, bend, reach, stand for more than two minutes, or walk more than ten feet.  [Tr. 80, 91, 101].

Plaintiff describes a typical day as "get up and sit on sofa watch tv, eat, go to restroom lay down eat sit and watch tv.  Lay down eat watch tv go to bed." [Tr. 75] (punctuation in original).  He claims to be unable to afford adequate medical care [Tr. 182-83, 316], yet is inexplicably able to afford up to one and one-half packs of cigarettes per day. [Tr. 125, 156, 179, 183].

---

[1]  In what the ALJ termed a "dismal work history" [Tr. 19], plaintiff's certified earnings record shows a total <u>lifetime</u> earnings of $4,443.42, comprised of $1,828.74 reported for 1991 and $2,614.68 reported for 2000.  [Tr. 56].  Those years roughly correspond to the dates provided by plaintiff for his dishwashing and maintenance jobs on the Work History Report.   [Tr. 67]. Elsewhere, however, plaintiff has acknowledged: engaging in either "packing" or "parking" work at a Pepsi plant in 2001 [Tr. 118]; "supporting himself by performing odd jobs for friends" [Tr. 209]; being "a handyman working for his father's construction business" [Tr. 216]; and installing carpet and flooring from 1984 through 1998, and again in 2004 [Tr. 124, 156, 183].  At some point between December 2004 and March 2005, a physician noted plaintiff's complaint of shortness of breath "with working a lot and doing a lot of activity."  [Tr. 148].  Clearly, the fruits of these labors were not reported as taxable income. [Tr. 56].

3

III.

*Relevant Medical Evidence*

1. <u>Physical</u>

Prior to 2006, plaintiff occasionally sought treatment and medication for complaints of pain in his back, neck, and legs. [Tr. 151, 154, 156]. He has alternately identified the origin of that pain as a motor vehicle accident, lifting a piano, pushing a van, diving into the bottom of a pond, or being hit in the back. [Tr. 177, 182, 215]. Thoracic and lumbar tenderness was noted in November 2004. [Tr. 185]. November and December 2004 lumbar imaging was normal. [Tr. 170, 188]. November 2004 thoracic imaging showed normal alignment, some sclerosis and osteophytic changes, and mild wedging at T9 consistent with an old compression fracture. [Tr. 188].

By March 2005, plaintiff was complaining of constant pain. [Tr. 144, 147-48]. Lumbar imaging was again negative [Tr. 168], as was an MRI of the right knee. [Tr. 167]. Thoracic x-rays showed mild changes "of old injuries to T5 and T9." [Tr. 166].

On January 4, 2006, the day of plaintiff's allegedly disabling fall, thoracic imaging showed normal vertebral alignment with only "mild deformity and compressive change involving the body of T9." [Tr. 164]. Cervical and lumbar imaging remained normal. [Tr. 162, 165]. Two days later, Dr. John Short observed tenderness and mild spasms at the mid-thoracic spine. [Tr. 135]. A thoracic MRI performed on January 25, 2006, indicated mild compression fractures at T5 and either T8 or T9 with some loss of vertebral

4

body height, along with a small herniation at T7-T8. [Tr. 160]. On January 31, 2006, Dr. Short had a "long discussion" with plaintiff "about how compression fractures work and how severe they can be . . . ." [Tr. 128]. Dr. Short continued an existing prescription for the narcotic pain reliever Percocet, with instructions "not to take more than we have allotted for pain . . . ." [Tr. 128]. The record reflects no additional physical treatment by Dr. Short beyond another brief extension of the Percocet prescription. [Tr. 126-27].

Neurosurgeon Larry Hartman examined plaintiff in February 2006. Plaintiff walked with a marked limp "secondary to apparent severe distress." [Tr. 210]. Dr. Hartman wrote that "almost any palpitation" of the back, "regardless of level or firmness, produce[d] severe pain" as did almost any manipulation of the lower legs. [Tr. 210]. After reviewing the minimal prior MRI findings, Dr. Hartman concluded that plaintiff "appears to be suffering from severe cervical and thoracic lumbar myofascial pain syndrome with rather prominent affective responses and a sensory examination which appears to be largely non-anatomic. . . . Based on the overwhelming pain response to even the lightest palpation anywhere in his thoracic spine . . . he appears to have an overwhelming pain syndrome." [Tr. 211]. Dr. Hartman recommended referral to a pain clinic. [Tr. 211].

Plaintiff then appeared at Morristown Pain Consultants on March 29, 2006, on referral from Dr. Hartman. [Tr. 215]. Plaintiff reported "constant, sharp, stabbing" back pain which he rated at a level of seven or eight on a scale of one to ten. [Tr. 215]. Nurse Timothy Jones observed cervical tenderness and pain to palpation at the thoracic spine. [Tr.

5

216]. The thoracic discomfort was thought to be "more characteristic of bone pain from the compression fractures," which Mr. Jones opined could be "severely painful." [Tr. 216]. Mr. Jones increased the Percocet dosage, and plaintiff signed a narcotic pain medication contract. [Tr. 217].

Plaintiff returned to the pain clinic on April 12, 2006. Dr. Michael Chavin noted that bone density test results were "approaching osteopenia." [Tr. 213]. Dr. Chavin also reviewed the urine drug screen from plaintiff's prior appointment.

> It was positive for oxycodone, which is what I would expect since he was on this when he came in from taking Percocet. Of concern, however, was the fact that he tested positive for Darvocet and he did not admit this.
>
> After careful questioning, the patient did admit recently getting some from his mother. I told him if he further takes any Darvocet or any other substance that has not been prescribed from this clinic that is a controlled substance or addictive in nature, he will be discharged, and next month when he comes in for his followup visit, we will be doing a urine drug screen.

[Tr. 213].

Plaintiff returned to the pain clinic on April 25, 2006. His pain was reportedly reduced to three or four out of ten. [Tr. 212]. The Percocet dosage was again increased, and Dr. Chavin wrote, "We will see him back in 30 days unless there are any problems or difficulties." [Tr. 212]. The administrative record shows no further treatment by Dr. Chavin. Plaintiff has alleged that he "quit" going to the pain clinic [Tr. 119] but has elsewhere acknowledged that he was in fact discharged due to a second failed drug screen. [Tr. 266].

Nonexamining Dr. Reeta Misra completed a Physical RFC Assessment in April 2006.  Dr. Misra opined that plaintiff can work at the medium level of exertion. [Tr. 218-223].

Plaintiff walked [Tr. 224] into the emergency room on May 27, 2006.  He reported increasing severe pain of two weeks duration [Tr. 227] and received prescriptions for Percocet and Soma. [Tr. 229, 234].  Plaintiff again walked [Tr. 230] into the emergency room on June 7, 2006, and reported that his medications had been "stolen." [Tr. 232].  The attending physician did not write new prescriptions [Tr. 232, 234], and plaintiff "walked out of [the] room" and left the facility without being discharged.  [Tr. 232].

Plaintiff was seen by neurosurgeon Stephen Natelson on July 24, 2006.  Dr. Natelson ordered testing and provided a hydrocodone prescription, although not at the strength requested by plaintiff. [Tr. 239].  Dr. Natelson subsequently diagnosed osteoporosis and a compression fracture at T8. [Tr. 236].  He recommended a kyphoplasty procedure but plaintiff declined, instead preferring a doubled dosage of hydrocodone while requesting a stronger pain medicine.  [Tr. 236, 238].  Dr. Natelson opined "that he is doing the wrong thing . . . and I don't want to support that by chronic narcotics so he needs to take that up with his family doctor."  [Tr. 236].

Nonexamining Dr. Glenda Knox-Carter completed a Physical RFC Assessment in August 2006.  Dr. Knox-Carter opined that plaintiff can work at the light level of exertion.  [Tr. 260-65].

Plaintiff consulted with brain and spine specialist David Wiles on August 30, 2006. Dr. Wiles's physical examination was unremarkable except for "some point tenderness" at T5 to T7. [Tr. 267]. Review of prior MRIs showed a compression fracture at T9, a wedge deformity at T5, and increased uptake at T2, T4 to T5, and T9. [Tr. 267]. Dr. Wiles opined that plaintiff likely has a "chronic pain syndrome." [Tr. 267]. He recommended physical therapy and renewed monitoring by a pain clinic. [Tr. 267].

The administrative record documents pain management by Dr. Allen Foster from October 2006 through July 2007. From March 2007 through the end of that period, plaintiff rated his normal level of pain at three or four on a scale of one to ten. [Tr. 281-85].

## B. Mental

Senior psychological examiner Pamela Branton, M.S. performed a consultative mental examination in November 2004 in association with a prior claim for Social Security benefits. [Tr. 177]. Ms. Branton noted that plaintiff had been in jail five times and had previously "helped his father install flooring occasionally part-time, but has never had a steady job." [Tr. 178]. Plaintiff "report[ed] that he was a heavy, daily alcohol drinker for years, until he went to jail 5 years ago." [Tr. 178-79].[2] Based on interview and evaluation, Ms. Branton opined that plaintiff "appears somewhat limited" in adaptation, understanding and remembering directions, social interaction, and recent memory and concentration, although she "suspect[ed] he could perform many more activities of daily living for himself

_____

[2] Of note, plaintiff told Dr. Chavin's pain clinic that he had no prior addiction to alcohol. [Tr. 216].

than he currently does." [Tr. 180-81].

In December 2004, nonexamining source George Davis, Ph.D. reviewed the record in plaintiff's prior claim and predicted no more than moderate mental impairment. [Tr. 195-97]. In August 2006, nonexamining source Rebecca Joslin, Ed.D. also opined that plaintiff has no more than a moderate impairment in any mental/vocational activity. [Tr. 256-58]. The previous month, treating physician William Martin wrote that plaintiff does not have an underlying mental disorder which significantly interferes with functioning. [Tr. 121].

## IV.

### *Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340

9

U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

10

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.*

## V.

### Analysis

On appeal, plaintiff first argues - correctly - that the ALJ erred by not sufficiently explaining the rejection of Dr. Knox-Carter's RFC Assessment, which restricted plaintiff to light exertion. The ALJ found plaintiff capable of performing "the full range of medium work . . . consistent with the opinion of the State Agency medical consultant set out in Exhibit 9F [Dr. Misra]." [Tr. 18]. The ALJ failed to even mention Dr. Knox-Carter's opinion, let alone provide justification for its rejection.

The court however deems this error harmless. Under an RFC for medium work, grid rule 203.25 directs a finding of "not disabled" in this case. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.25. If the ALJ had instead fully adopted Dr. Knox-Carter's light work opinion, the grid would still have directed a finding of "not disabled," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.17, as it also would have done even if the ALJ had restricted plaintiff to sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.24. This issue merits no further discussion.

Plaintiff also argues that the various mental health opinions of record make application of the grid inappropriate in this case. Where a claimant is found to be *physically* capable of performing the full range of work at a particular level, the Commissioner may meet his step five burden by referencing the grid unless the claimant has nonexertional impairments of sufficient significance. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771-72 (6th Cir. 1987). In other words,

> It should be emphasized that the grid is only used when the components of the grid precisely match the characteristics of the claimant. Thus, the only role the guidelines play is to take administrative notice of the availability of jobs, or lack thereof, for claimants whose abilities are accurately described by the grid.

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1981).

To preclude use of the grid, a nonexertional limitation must *significantly* or *severely* restrict the ability to work. *See Cole*, 820 F.2d at 772. A minor restriction is insufficient. *See, e.g., Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986).

As detailed above, Ms. Branton opined that plaintiff "appeared somewhat limited" in certain capacities, and nonexamining sources Davis and Joslin predicted some moderate mental impairments. The ALJ did not err - particularly in light of the striking facts of this case - in concluding that plaintiff's possible "moderate" or "somewhat" limitations were not sufficiently significant or severe to preclude application of the grid. That conclusion is consistent with the statement of treating physician Martin, who opined that

12

plaintiff does not have an underlying mental disorder which significantly interferes with functioning. [Tr. 121].

The ALJ discussed the evidence supporting the possibility of some pain and impairment, but provided ample reasons for the conclusion that plaintiff's subjective complaints appear overstated:

> The claimant's credibility is diminished by his failure to comply with his pain management contract, his drug-seeking behavior, and his lack of medical treatment . . . other than prescription medications, and evidence of pain behavior. The claimant has not required hospitalization due to pain. No treating or examining physician has indicated that the claimant is totally disabled due to pain. While the claimant has described limited daily activities, it appears that any limitation in the claimant's daily activities at the medium level of exertion are primarily voluntary in nature as no treating or examining physician has restricted the claimant's activities as he describes. Despite his young age, he has a dismal work history and apparently has never been very motivated to enhance his vocational career.

[Tr. 19]. The court additionally notes:

> 1. In March 2006, plaintiff portrayed himself to the Commissioner as a virtual invalid who is incapable of standing for more than two minutes or walking for more than ten feet, yet in May and June of that year he was able to walk into an emergency room in search of narcotic prescriptions. During that same period, plaintiff was also seeking medical treatment for poison ivy on his back and arms [Tr. 122, 124], which is completely inconsistent with his purported invalid status.

> 2. Plaintiff's credibility is impacted by his apparent failure to report most of his lifetime earnings.

> 3. Plaintiff has himself acknowledged a significant reduction in pain when supervised by pain management clinics, and he presumably would have continued to reap that benefit in 2006 had he not been discharged by Dr. Chavin for failing two drug screens. *See* 20 C.F.R. § 416.909 (requiring an impairment of at least twelve month's duration).

13

4. Plaintiff claims to be unable to afford adequate medical care yet can afford up to one and one-half packs of cigarettes per day. This style of life is completely inconsistent with the limitations alleged. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

5. Plaintiff's credibility is further impacted by his denial of prior alcohol addiction to Dr. Chavin's pain clinic.

6. Plaintiff told Dr. Joseph Johnson in November 2004 that he does not want to drive due to alleged daytime fatigue [Tr. 183] but in March 2006 told the Commissioner that he does not even have a drivers license [Tr. 78], presumably due to prior offenses for DUI and driving on a suspended license. [Tr. 178].

Despite the abundant credibility concerns in the instant record, it should be made clear that the ALJ did not conclude that plaintiff does not suffer some discomfort. Physical complaints and the inconsistent objective evidence were taken into account by the ALJ in restricting the RFC to medium exertion. As so often is the case, it is the *severity* of plaintiff's condition that is at issue, and substantial evidence supports the conclusion that the present complaints are overstated and that plaintiff is not limited to the extent alleged.

There is evidence that plaintiff suffers from conditions that could reasonably be expected to cause some discomfort. *See generally Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). However, viewing the present administrative record as a whole, a reasonable fact-finder could conclude that plaintiff's documented conditions are not "of such a severity that [they could] reasonably be expected to produce the alleged disabling pain." *See id.* at 853.

The court concludes that application of the grid was appropriate in this case. For the reasons provided herein, the decision of the Commissioner was supported by substantial evidence and will be affirmed. An order consistent with this opinion will be entered.

ENTER:

_____s/ Leon Jordan_____
United States District Judge